WILLIAM J. GOINES (SBN 61290)
KAREN ROSENTHAL (SBN 209419)
CINDY HAMILTON (SBN 217951)
GREENBERG TRAURIG, LLP
1900 University Avenue, Fifth Floor
East Palo Alto, California 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508
Email:   goinesw@gtlaw.com
         hamiltonc@gtlaw.com

Attorneys for Defendants and Cross-Complainants
David D. McDonald, Donna K. McDonald,
National Expert Witness Network and Technology
CLE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CV 08 0534

| | |
|---|---|
| JENNIFER OSBELT,<br><br>Plaintiff(s);<br><br>v.<br><br>DAVID D. McDONALD, DONNA K. McDONALD, and DOES 1-10, inclusive,<br><br>Defendant(s).<br><br>DAVID D. McDONALD; DONNA K. McDONALD; NATIONAL EXPERT WITNESS NETWORK, a California Limited Liability Company; TECHNOLOGY CLE, a California Limited Liability Company,<br><br>Cross-Complainants,<br><br>v.<br><br>JENNIFER OSBELT, individually and doing business as PALO ALTO TECHNICAL, and ROES 1-10, inclusive,<br><br>Cross-Defendants. | State Court Case No.: CIV 463528<br><br>**DECLARATION OF CINDY HAMILTON IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. § 1331, 1441 and 1446** |

I, Cindy Hamilton, declare:

I am an associate in the law firm of Greenberg Traurig, LLP, attorneys of record for Defendants and Cross-Complainants David D. McDonald, Donna K. McDonald, National Expert Witness Network, LLC and Technology CLE, LLC. I am thoroughly familiar with the matters herein stated and if called upon as a witness I could and would competently testify thereto.

1. Attached hereto as **Exhibit A** is a true and correct copy of excerpts (pp. 165-173) of the transcript of deposition testimony of Jennifer Osbelt held on January 3, 2008.

I declare under penalty of perjury that the foregoing is true and correct. Executed at East Palo Alto, California, this 24 day of January, 2008.

*Cindy Hamilton*
Cindy Hamilton

**EXHIBIT A**

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

JENNIFER OSBELT,

        Plaintiff,

vs.                          No. CIV 463528

DAVID MCDONALD, DONNA K. MCDONALD,

        Defendants.
_____/

AND RELATED CROSS-ACTION

**CERTIFIED COPY**

Deposition of

JENNIFER OSBELT

Friday, January 4, 2008

Volume 1

Pages 1 to 193

Reported by:
IRIS MEINKE-SMITH, RMR/CRR
CSR No. 3798
Job No. 1839JC



PHILLIPS LEGAL SERVICES
SAN FRANCISCO DEPOSITION REPORTERS
ONE SUTTER STREET, SUITE 700
SAN FRANCISCO, CA 94104
1-888-333-8270
WWW.PHILLIPSDEPO.COM

1          Do you see that?
2  A.     Yes, I do.
3  Q.     NEWN had two separate retirement vehicles in
4  place in 2006 and 2007, did they not?
5  A.     In 2007, I think, yes.
6  Q.     And can you tell me what you understood
7  those to be?
8  A.     I'm not totally familiar with the retirement
9  plans because the McDonalds had really set that up
10 with Bidwell Consulting. And they had asked me to
11 sign as a fiduciary and trustee because I was
12 25 percent owner of the company and they needed me
13 to. But I just signed to set up the 401(k) for the
14 employees.
15 Q.     Was one of the accounts that you had through
16 NEWN a 401(k)?
17 A.     I think it was.
18 Q.     And the other account was what, if you
19 understood it?
20 A.     I think it was a pension profit plan.
21 Q.     And you have accused the McDonalds of taking
22 your 401(k) and pension profit sharing plan in this
23 case; is that true?
24 A.     That's correct.
25 Q.     What bases do you have to say that?

165

1  A.         Well, I never agreed to fund it, number one.
2             Number two, for the 401(k) plan, I never
3  signed a salary reduction form. And the reason why I
4  know that is because I had a talk with Donna and Dave
5  McDonald and LeAnn in their house that I was not
6  going to fund it because I have a Prudential account
7  that I've already funded and I can't go over that
8  amount for the year. I have a maximum amount that I
9  can put in. And Prudential has been my IRA for years
10 and I will not fund my portion of the profits to the
11 plan. And it was well understood that I'm not going
12 to do that.
13 Q.         So they stole your money?
14 A.         I don't know if they stole it. They took my
15 money and put it in this plan without my salary
16 reduction form or a salary reduction form. So I'd
17 already funded my IRA, and then they went ahead and
18 put extra money into this plan without my permission
19 and it exceeded my maximum for the year. If they had
20 asked me, I would have told them that I had already
21 funded my maximum for the year.
22 Q.         Well, you got -- you would have had to have
23 been notified that there was a deduction made from
24 your distributions for a 401(k) contribution, would
25 you not?

166

1  A.      Donna wrote me an e-mail and said, "I'm
2  going to submit this amount for you."
3          And so I said, "Okay. Well, let me take a
4  look at it."
5          And I contacted Steve Sutter and he said,
6  "Yes, this has already been funded."
7          And then I contacted Bidwell Consulting,
8  Creasia Gale, and she stonewalled me. She said I had
9  been removed as trustee and she can't talk to me.
10 Q.      Do you have any evidence that funds are not
11 sitting in a 401(k) account for you that were
12 distributed to a 401(k) account for the benefit of
13 Jennifer Osbelt from NEWN?
14 A.      I never approved them taking the money and
15 putting it in this account.
16 Q.      That's a different question. My question
17 is, do you have any evidence, any evidence that the
18 funds that were distributed to your 401(k) account
19 aren't sitting in a 401(k) account for the benefit of
20 Jennifer Osbelt?
21         MR. PONIST: Objection; mischaracterizes
22 testimony.
23         THE WITNESS: What evidence -- I have
24 evidence -- no, I don't have evidence of that. I
25 have evidence that they took my money without my

167

1  permission and funded this plan without a salary
2  reduction form and funded it without my permission,
3  not knowing that I'd already funded my IRA.
4  Q.		BY MR. GOINES: What would have been the
5  consequences of the funding of your 401(k) plan
6  through NEWN?
7  A.		Because I --
8  		MR. PONIST: Objection; lack of foundation,
9  calls for expert opinion.
10 		But you can answer.
11 Q.		BY MR. GOINES: Have you had to pay any
12 penalties, have you had to pay any taxes, have you
13 had to pay any interest as a result of that?
14 A.		Yes, I have to take my money out of my
15 Prudential account and pay an extra 10 percent
16 penalty.
17 Q.		Have you done that?
18 A.		No. Because I'm disputing them putting my
19 money inside this 401(k) plan without my permission.
20 Q.		So what you'd rather have is the money out
21 of your 401(k) so you can pay taxes on it?
22 A.		I would rather have the money out of my
23 401(k) and put it in my personal checking account
24 where it belonged.
25 Q.		And you can pay taxes on it, right?

168

1   A.      I'm not supposed to fund that money. I'm
2   over my maximum.
3   Q.      Let me just ask you a question. Have you
4   attempted to determine whether the amount of money
5   that you contend that the McDonalds put in your
6   401(k) plan without your permission still sits in a
7   401(k) plan for the benefit of Jennifer Osbelt?
8   A.      I believe it still sits somewhere, yes. I
9   believe it sits at Edward Jones.
10  Q.      Do you know how much it was?
11  A.      I think it was around 40,000.
12  Q.      Are you talking about 401(k) or are you
13  talking about a pension plan?
14  A.      I think it was the combination of the two
15  plans.
16  Q.      I'm going to try and distinguish the two, if
17  I can.
18          Your understanding is that the funds,
19  whether 401(k) or the retirement plan, are sitting in
20  an account at Edward Jones. Is that consistent with
21  what you believe to be the facts?
22  A.      I think they're still sitting in an account.
23  Q.      And you think the total amount is about 40K,
24  plus or minus?
25  A.      I think so.

169

1  Q.    And was this just for '06 or was this for
2  prior years?
3  A.    This is just for '06.
4  Q.    To your knowledge, Jennifer, were any funds
5  distributed from NEWN to your benefit in a 401(k) or
6  retirement plan for any year prior to '06?
7  A.    From NEWN?
8  Q.    Yes, ma'am.
9  A.    No.
10 Q.    So what we're talking about here is the '06
11 distribution from NEWN that went into 401(k) and I'll
12 call it a pension plan.
13 A.    Uh-huh.
14 Q.    I'm not sure that's the right word. So it's
15 just '06?
16 A.    Yes.
17 Q.    And are you saying, Jennifer, that you
18 instructed the McDonalds to not make a contribution
19 to either the 401(k) or the pension plan for your
20 benefit?
21 A.    That's correct.
22 Q.    Do you have any understanding one way or
23 another whether you could do that?
24       And let me see if I can give you why I'm
25 asking that question.

170

1     If a company adopts a certain type of
2  pension plan, it has to do it for everybody as
3  opposed to just select people. Is that a concept
4  that is okay with you?
5  A.     Yes.
6  Q.     Okay. Do you have an understanding that
7  NEWN adopted a plan that allowed it to distribute
8  money for the retirement of its principals in 2006?
9  A.     Yes.
10 Q.     And did you participate in the okay of that
11 plan?
12 A.     Yes, I was a trustee of that plan.
13 Q.     So let me see if I can ask you this
14 question. I want to understand your -- the issue.
15     Your issue isn't that the money isn't
16 sitting in an account for the benefit of Jennifer
17 Osbelt. Your contention is that they shouldn't have
18 put it there in the first place?
19 A.     That's correct.
20 Q.     So you're not saying that Dave and Donna
21 McDonald, as to this 401(k) retirement plan, took the
22 money and put it in their pockets. You're saying I
23 didn't want them to put it away for me in this
24 account that is sitting at Edwards Jones. Am I
25 syncing with you?

171

1  A.    That's correct.
2  Q.    Have you made efforts to withdraw any money
3  that was set aside from 2006 income from either Jones
4  or any other, I don't know, person who might be
5  holding those funds?
6  A.    Yes, I have.  They said that I cannot
7  withdraw for a year.
8  Q.    "They" is?
9  A.    Bidwell Consulting.
10 Q.    Person at Bidwell Consulting?
11 A.    Creasia Gale.  Creasia Gale.
12 Q.    We'll get you a spelling later.
13       C-r-e-c-i-a?
14 A.    C-r-e-a-s-i-a.
15 Q.    Thank you.  And did Creasia tell you that
16 the reason you couldn't make a withdrawal for a
17 period -- a year needed to expire was something that
18 Dave or Donna McDonald had done or that that was the
19 plan?
20 A.    They said that it was in the summary plan
21 description.
22 Q.    Did you ever get a summary plan description?
23 A.    Yes, I asked for the summary plan
24 description.
25 Q.    And provided to you by whom?

172

1  A.        I believe it was Dave Banathy.
2  Q.        At Bidwell?
3  A.        At Bidwell.
4  Q.        Am I understanding correctly that after a
year expires from mid '07, you will be able to make a
withdrawal?
7  A.        Well, I can withdraw it with a penalty. So
I'm losing that. And also, it's just sitting in a
money market, I believe. If I had it in my
Prudential account, I would be making a lot more
money with it. But I already overfunded -- I already
funded my Prudential account, so I wasn't supposed to
fund anything else ever anywhere this year.
14 Q.        Did you have an understanding as to whether
you could designate the destination of the proceeds
being deposited at the Edward Jones account?
17 A.        No, my understanding was that Dave and Donna
would pick where it's going. And they actually said,
"We're going pick where it's going."
20 Q.        So your understanding is you have no choice?
21 A.        That's correct.
22 Q.        Okay. Bullet point 5 says, "The buy-out
agreement will" -- in 51. Sorry.
            "The buy-out agreement will also cover the
sale of Jennifer's 25 percent in TCLE, LLC. As

173

```
 1              REPORTER'S CERTIFICATE
 2       I certify that the foregoing proceedings in
 3  the within-entitled cause were reported at the time
 4  and place therein named; that said proceedings were
 5  reported by me, a duly Certified Shorthand Reporter
 6  of the State of California authorized to administer
 7  oaths and affirmations, and were thereafter
 8  transcribed into typewriting.
 9       I further certify that I am not of counsel
10  or attorney for either or any of the parties to said
11  cause of action, nor in any way interested in the
12  outcome of the cause named in said cause of action.
13       IN WITNESS WHEREOF, I have hereunto set my
14  hand this 14th day of January, 2008.
15
16       _____
17       IRIS MEINKE-SMITH, CA CSR No.3798
         Registered Merit Reporter
18       Certified Realtime Reporter
19
20
21
22
23
24
25
```