1  ARA JABAGCHOURIAN (205777)
   ajabagchourian@cpmlegal.com
2  SEAN E. PONIST (204712)
   sponist@cpmlegal.com
3  **COTCHETT, PITRE & McCARTHY**
   San Francisco Airport Office Center
4  840 Malcolm Road, Suite 200
   Burlingame, CA 94010
5  Telephone: (650) 697-6000
   Facsimile:  (650) 697-0577
6
   *Attorneys for Plaintiff*
7

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10              **SAN FRANCISCO DIVISION**

11

12 JENNIFER OSBELT,                    | Case No.  CV 08-0534 JL

13         Plaintiff,                  | **DECLARATION OF ARA JABAGCHOURIAN IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REMAND TO STATE COURT**

14    v.

15 DAVID D. McDONALD, DONNA K.
   McDONALD, and DOES 1 THROUGH 10,
16 inclusive,                          | Date:       April 9, 2008
                                         Time:       9:30 a.m.
17       Defendants.                     Courtroom:  F
                                         Judge:      Hon. Magistrate James Larson
18
   DAVID D. McDONALD; DONNA K.
19 McDONALD; NATIONAL EXPERT
   WITNESS NETWORK, a California Limited
20 Liability Company; TECHNOLOGY CLE, a
   California Limited Liability Company,
21
         Cross-Complainants,
22
    v.
23
   JENNIFER OSBELT, individually and doing
24 business as PALO ALTO TECHNICAL, and
   ROES 1-10, inclusive,
25
         Cross-Defendants.
26

27

28

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

**DECLARATION OF ARA JABAGCHOURIAN ISO PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REMAND TO STATE COURT**

1 | I, ARA JABAGCHOURIAN, declares as follows:

2 |     1.    I am an attorney duly licensed and admitted to practice before all courts in the

3 | State of California, and am associated with the law firm of Cotchett, Pitre & McCarthy, counsel

4 | for Plaintiff Jennifer Osbelt ("Plaintiff") in this action.

5 |     2.    Attached hereto as Exhibit A is a true and correct copy of Plaintiff's First

6 | Amended Complaint filed on December 4, 2007 in the Superior Court of California, County of

7 | San Mateo. No where within the complaint is an allegation made regarding an ERISA claim.

8 |     3.    As counsel for Plaintiff, I am not seeking to recover damages for penalties

9 | associated with early withdrawal of monies from a 401(k) plan.

10 |     4.    I have expended 10.5 hours researching and preparing the motion for remand. My

11 | billable rate is $350 per hour.

12 |     I declare under penalty of perjury under the laws of the State of California that the

13 | foregoing is true and correct. Executed this 22th day of February, 2008 at Burlingame,

14 | California.

15

16 |                         */s/ Ara Jabagchourian*
                        ARA JABAGCHOURIAN

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF ARA JABAGCHOURIAN ISO PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REMAND TO STATE COURT**
    1

# EXHIBIT A

1   JOSEPH W. COTCHETT (36324)
    jcotchett@cpmlegal.com
2   ARA R. JABAGCHOURIAN (205777)
    ajabagchourian@cpmlegal.com
3   SEAN E. PONIST (204712)
    sponist@cpmlegal.com
4   **COTCHETT, PITRE & McCARTHY**
    840 Malcolm Road, Suite 200
5   Burlingame, CA 94010
    Telephone: (650) 697-6000
6   Facsimile: (650) 697-0577

7   Attorneys for Plaintiff Jennifer Osbelt

8

9
                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
10
                              **COUNTY OF SAN MATEO**
11

12   JENNIFER OSBELT,                    )   Case No. CIV463528
                                         )
13                Plaintiff,             )   **FIRST AMENDED COMPLAINT FOR:**
                                         )
14        v.                             )   **1)   BREACH OF CONTRACT:**
                                         )        **AGREEMENT OF SALE;**
15   DAVID D. MCDONALD, DONNA K.         )
     MCDONALD, and DOES 1-10, inclusive, )   **2)   BREACH OF CONTRACT:**
16                                       )        **OPERATING AGREEMENT;**
                  Defendants.            )
17                                       )   **3)   BREACH OF FIDUCIARY DUTY;**
                                         )
18                                       )   **4)   ACCOUNTING;**
     _____ )
19                                       )   **5)   SLANDER PER SE;**
     DAVID D. McDONALD; DONNA K.         )
20   McDONALD; NATIONAL EXPERT           )   **6)   VIOLATIONS OF THE**
     WITNESS NETWORK, a California Limited )      **BEVERLY-KILLEA LIMITED**
21   Liability Company; TECHNOLOGY CLE, a )      **LIABILITY COMPANY ACT**
     California Limited Liability Company, )     **§§ 17058, 17106;**
22                                       )
                  Cross-Complainants,    )   **7)   CORPORATE WASTE;**
23                                       )
          v.                             )   **8)   ABUSE OF CONTROL;**
24                                       )
     JENNIFER OSBELT, individually and doing )   **9)   CONVERSION;**
25   business as PALO ALTO TECHNICAL, and )
     ROES 1-10, inclusive,              )   **10)  CANCELLATION OF**
26                                       )        **INSTRUMENT/RESTITUTION**
                  Cross-Defendants.      )        **BASED ON RESCISSION;**
27                                       )
                                         )   **11)  UNJUST ENRICHMENT; AND**
28                                       )
                                         )   **12)  ALTER-EGO LIABILITY.**

⊕
LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

_____
                 FIRST AMENDED COMPLAINT; Case No. CIV463528

1

# TABLE OF CONTENTS

2

**Page(s)**

3  I. NATURE OF THE ACTION ...................................................... 1

4  II. THE PARTIES ............................................................... 2

5  III. JURISDICTION AND VENUE ................................................. 3

6  IV. FACTUAL ALLEGATIONS ..................................................... 3

7  FIRST CAUSE OF ACTION
   (Breach of Contract: Agreement of Sale Against All Defendants) .................. 9

8
9  SECOND CAUSE OF ACTION
   (Breach of Contract: Operating Agreement Against Defendants
   David McDonald and Donna McDonald) .................................... 10

10
11 THIRD CAUSE OF ACTION
   (Breach of Fiduciary Duty Against Defendants David McDonald and
   Donna McDonald) ...................................................... 12

12
13 FOURTH CAUSE OF ACTION
   (Accounting Against Defendants David McDonald and Donna McDonald) ......... 13

14 FIFTH CAUSE OF ACTION
   (Slander Per Se Against Defendants David McDonald and Donna McDonald) ....... 13

15
16 SIXTH CAUSE OF ACTION
   (Violations of Beverly-Killea Limited Liability Company Act §§ 17058,
   17106 Against Defendants David McDonald and Donna McDonald) .............. 14

17
18 SEVENTH CAUSE OF ACTION
   (Corporate Waste Against Defendants David McDonald and
   Donna McDonald) ...................................................... 14

19
20 EIGHT CAUSE OF ACTION
   (Abuse of Control Against Defendants David McDonald and
   Donna McDonald) ...................................................... 16

21
22 NINTH CAUSE OF ACTION
   (Conversion Against Defendants David McDonald and
   Donna McDonald) ...................................................... 17

23
24 TENTH CAUSE OF ACTION
   (Cancellation of Instrument/Restitution Based on Rescission Against
   Defendants David McDonald and Donna McDonald) ........................... 18

25
26 ELEVENTH CAUSE OF ACTION
   (Unjust Enrichment Against Defendants David McDonald and
   Donna McDonald) ...................................................... 20

27

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

TWELFTH CAUSE OF ACTION
(Alter Ego Liability Against Defendants David McDonald and
    Donna McDonald) ................................................................ 20

PRAYER ................................................................................ 21

JURY DEMAND ...................................................................... 22

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

For her Complaint, plaintiff Jennifer Osbelt ("Osbelt") alleges as follows:

## I. **NATURE OF THE ACTION**

1.    This action arises out of breach of a written Operating Agreement and Articles of Organization (the "Operating Agreement") dated as of May 13, 2004 among David D. McDonald, his wife Donna K. McDonald (collectively, the "McDonalds") and Osbelt related to National Expert Witness Network, LLC ("NEWN"). Pursuant to the Operating Agreement, OsBelt owns 25% of NEWN while the McDonalds own the remaining 75% in equal shares.

2.    In the early part of 2007, Osbelt raised with the McDonalds various questions related to a purported loan of $210,000 by the McDonalds to NEWN, which the McDonalds have refused to satisfactorily answer. In addition, Osbelt learned that the McDonalds had provided false information to NEWN's accountants, causing them to prepare and file false income tax returns on behalf of NEWN and certain tax schedules related to Osbelt.

3.    In order to ascertain answers to her questions, Osbelt repeatedly requested access to NEWN's books and records. Despite Osbelt's right to such access under the Operating Agreement and under California statute, the McDonalds have refused Osbelt access to NEWN's books and records.

4.    In addition, the McDonalds have excluded Osbelt from participating in the management of NEWN, and have informed NEWN customers that Osbelt is leaving the expert witness business and NEWN "to get married and have babies."

5.    On March 26, 2007, David McDonald, on behalf of NEWN, offered to purchase Osbelt's interest in NEWN for more than $1.8 million, an offer which Osbelt accepted.

6.    Despite numerous discussions and demands regarding performance, NEWN and/or the McDonalds have failed to perform under the agreement to purchase Osbelt's interest in NEWN and have continued to breach their fiduciary obligations and other obligations under the Operating Agreement and the Beverly-Killea Limited Liability Company Act.

7.    This lawsuit follows.

## II. THE PARTIES

8.    Plaintiff Osbelt is an individual residing in Redwood Shores and is a member of National Expert Witness Network, LLC. Osbelt has over 10 years of high tech industry experience, with a focus on cable and wireless networking and security, web development, and client/server technology. She is familiar with the technologies applied to the Internet and Intranet networks, cable and wireless networking and security, LAN/WAN infrastructure, client/server applications, relational database management systems, network performance management, and eBusiness technologies. Osbelt's recent work has been in providing expert witnesses and case management services to the legal profession in areas of high-technology.

9.    Defendant National Expert Witness Network, LLC ("NEWN") is a California Limited Liability Company with its principal place of business at One Lagoon Drive, Suite 140 Redwood City, CA 94065. NEWN assists attorneys by providing a network of experts and consultants in high technology disciplines for intellectual property litigation.

10.    Defendant David McDonald is an individual residing at 15309 Northlake Road, Magalia, CA 95954. David McDonald is a Member of NEWN.

11.    Defendant Donna McDonald, David McDonald's wife, is an individual residing at 15309 Northlake Road, Magalia, CA 95954. Donna McDonald is a Member of NEWN.

12.    Osbelt does not know the true names and capacities, whether individual, partnership, corporate, associate, or otherwise, of defendants Does 1 through 10, inclusive, and on that basis designates said defendants herein by such fictitious names. As the true names and capacities of defendants Does 1 through 10, inclusive, or any of them, become known, Osbelt will seek leave to amend this Complaint to state their true names and capacities. Osbelt is informed and believes, and on that basis alleges, that each of the defendants designated herein as Does 1 through 10, inclusive, is in some way liable, responsible or indebted to Osbelt in connection with the events and/or transactions referred to in this Complaint.

13.    Osbelt is informed and believes, and on that basis alleges, that except where otherwise explicitly alleged, each of the defendants, including Does 1 through 10, inclusive, is, and at all relevant times herein mentioned was, the agent, partner, joint venturer, employee,

❸
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

1  and/or conspirator of the remaining defendants, and is, and at all relevant times herein mentioned
2  was, in performing and failing to perform the acts and conduct hereinafter alleged, acting within
3  the course and scope of such agency, partnership, joint venture, employment, and/or conspiracy.
4  Osbelt is further informed and believes, and on that basis alleges, that the acts and conduct of
5  each of the defendants were known to, and authorized and ratified by, the remaining defendants,
6  and that each of the defendants is legally responsible for the conduct and damages herein alleged.

### III. JURISDICTION AND VENUE

8  14.     This Court has jurisdiction of this matter pursuant to California Code of Civil
9  Procedure ("CCP") Section 410.10.  Each of the defendants reside within the state.

10  15.     Venue is proper in this judicial district pursuant to CCP § 395 because the
11  contract at issue was made in, or is to be performed, or the breach has occurred, in this county.
12  The amount in controversy exceeds the jurisdictional minimum amount of this Court.

### IV. FACTUAL ALLEGATIONS

14  16.     On or about May 13, 2004, Osbelt and the McDonalds entered into an Operating
15  Agreement and Articles of Organization (the "Operating Agreement").  A copy of the Operating
16  Agreement is attached as Exhibit A.  Pursuant to the Operating Agreement, Osbelt is a 25%
17  owner of NEWN, and the McDonalds each own 37.5% of NEWN.

18  17.     The authority of members to participate in the management of NEWN is set forth
19  in Section 5 of the Operating Agreement. Pursuant to Section 5 of the Operating Agreement,
20  each of the members "will participate in the management of the Company affairs ... and ... have
21  exclusive authority to manage and conduct all the business of the Company, with all rights,
22  powers and authority that are conferred by law or are necessary, convenient or appropriate for the
23  managing of the Company's business ...." (Ex. A, § 5.)

24  18.     Pursuant to Section 6.5 of the Operating Agreement, NEWN's books and records
25  are to be maintained at its principal place of business and "[a]ll Members ... have the right on
26  reasonable notice to the Company to ... inspect and ... copy the books and records of the
27  Company ...." (Ex. A, § 6.5.)

28

❸
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

19. In the event of a so-called "Triggering Event," the "Company and other Members shall have the option to purchase the Membership Interest in the Company of such Member ... at the price and on the terms provided in Section 8.8" of the Operating Agreement. (Ex. A, § 1.38.)

20. In late March 2007, Osbelt became aware of a purported loan from the McDonald's to NEWN in an amount of $210,000 ostensibly made in 2003. To Osbelt's knowledge, the loan had not been reflected in NEWN's books and records at any time prior to 2007, and Osbelt requested an explanation from the McDonalds and documentary evidence of the loan. The McDonalds refused to provide a satisfactory response to Osbelt's inquiries.

21. On March 26, 2007, David McDonald sent Osbelt an e-mail complaining about Osbelt's inquiries concerning the loan. He also stated that Osbelt's "lack of trust [in the McDonalds] is insulting to us completely unwarranted and frankly unacceptable. I think that it is a good idea for you to move on." McDonald then went on to explain to Osbelt the contractual procedure pursuant to the Operating Agreement for the McDonalds to purchase Osbelt's interest ("The Company must determine that we wish to purchase membership shares; we do."), and the calculation of the purchase price. McDonald calculated the purchase price of Osbelt's interest at NEWN as $1,886,063.80 and demanded that Osbelt accept or reject the offer that same day. A copy of David McDonald's e-mail dated March 26, 2007 is attached as Exhibit B.

22. On March 26, 2007, and as requested by David McDonald, Osbelt responded to McDonalds' and/or NEWN's offer by e-mail stating, in pertinent part: "I will take your deal ... [g]o ahead and draw up the papers." A copy of Osbelt's e-mail dated March 26, 2007 is attached as Exhibit C. On April 3, 2007, Osbelt left to get married and celebrate their union in Hawaii.

23. While in Hawaii, Osbelt was contacted by her tax preparer. He advised her that, according to the tax forms provided by NEWN, she owed the IRS an unexpected amount of taxes. Osbelt requested from her tax preparer a copy of the Schedule K-ls, which reflect a member's purported income from a limited liability corporation, submitted by NEWN. Osbelt immediately realized the information on the schedules was false and attributed substantially more of NEWN's annual taxable income to her than was proper under the Operating Agreement. Osbelt's inquiries to the McDonalds concerning the discrepancies were rebuffed.

24. On her return from her wedding and celebration in Hawaii on April 17,2007, Osbelt attempted to contact the McDonalds to discuss the false Schedule K-ls, but they refused to speak with her. On information and belief, the McDonalds also instructed NEWN's accountants not to discuss any of NEWN's financial affairs with Osbelt. Furthermore, Osbelt learned that the McDonalds had hired an individual named Tom Fisher to take over Osbelt's operational duties at NEWN. Finally, on information and belief, the McDonalds began informing NEWN clients that Osbelt has left NEWN and the expert witness business "to get married and have babies."

25. On or about April 20, 2007, Osbelt received a letter from US Bank advising her that NEWN was overdue on renewing its line of credit with US Bank, and requesting certain financial information from her to renew the NEWN Member's personal guarantees for the line of credit, despite the fact that the McDonalds and/or NEWN was purchasing Osbelt's interest in NEWN. A copy of US Bank's letter dated April 17, 2007, is attached as Exhibit D. By this time, NEWN's indebtedness to US Bank had grown to over $260,000.

26. Concerned about the extent of NEWN's indebtedness and the McDonalds' refusal to provide details about the loan, Osbelt contacted US Bank and informed it that she would not sign as a guarantor until she had received details about the loan from the McDonalds.

27. On April 20, 2007, Osbelt sent David McDonald an e-mail in which she requested, inter alia, to be allowed to inspect and copy the "the past 4 years of books and records of [NEWN]. . . ." A copy of Osbelt's April 20, 2007 e-mail is attached as Exhibit E.

28. On May 5, 2007, David McDonald sent Chris Rodi ("Rodi"), Osbelt's husband, an e-mail stating that he had been notified by US Bank that it was calling in the loan. Attached "to the e-mail was a letter from David McDonald to Rodi. That same day, Rodi responded that Osbelt was unwilling to renew her personal guarantee to US Bank on behalf of NEWN and explained her reasoning therefor. He also explained that any purported capital call under the Operating Agreement would be premature and ineffective given the disparities that Osbelt had found in NEWN's financial records, including the false Schedule K-1s. A copy of David McDonald's e-mail dated May 5, 2007, the attached letter, and Rodi's response is attached as Exhibit F.

1  29.  On May 8, 2007, David McDonald sent Osbelt an e-mail to which he attached a
2  Notice of Default from US Bank to NEWN dated May 7, 2007. In his letter, McDonald
3  purported to invoke the provisions of Section 3.1 of the Operating Agreement and requested that
4  Osbelt contribute an amount of $66,104.48 representing 25% of NEWN's indebtedness to US
5  Bank by May 23, 2007. A copy of McDonald's e-mail dated May 8, 2007 and the US Bank
6  notice dated May 7, 2007, are attached as Exhibit G.

7  30.  That same day, May 8, 2007, and the next, May 9,2007, Rodi, on behalf of Osbelt,
8  sent two e-mails to David McDonald assuring McDonald that Osbelt wanted to comply fully
9  with any obligation she had under the Operating Agreement but advising him that she was unable
10  to do so given the discrepancy in NEWN's financial statements and the false Schedule K-1s, and
11  that the purported invocation of Section 3.1 of the Operating Agreement was ineffective. A copy
12  of Rodi's e-mails dated May 8 and 9, 2007 is attached as Exhibit H.

13  31.  On May 10, 2007, David McDonald responded by e-mail to Rodi bluntly stating
14  "Jennifer has 13 days left to provide the additional cash ...." By this time, it was clear that the
15  McDonalds were intent on forcing Osbelt out of NEWN by any means possible. A copy of
16  David McDonald's May 10, 2007 e-mail is attached as Exhibit I.

17  32.  On May 17, 2007, Donald Gagliardi of Bergeson, LLP, on behalf of Osbelt, sent a
18  letter to E. Thorn Rumberger ("Rumberger") of Greenberg Traurig, an attorney believed to
19  represent the McDonalds, reiterating Osbelt's request for access to NEWN's books and records;
20  reiterating Osbelt's position that the purported capital call was invalid; and suggesting that the
21  parties work toward a negotiated settlement of the issues between them. A copy of Donald
22  Gagliardi's letter of May 17, 2007 is attached as Exhibit J.

23  33.  At Rumberger's request, attorneys for Osbelt attended a meeting at Rumberger's
24  offices on May 18, 2007, to initiate a dialogue between the parties. At that meeting, counsel for
25  Osbelt again reiterated that inspection of NEWN's books and records was a predicate to any
26  resolution of the dispute between the parties. Counsel for the McDonalds undertook to schedule
27  such inspection.

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

1    34.    On May 21, 2007, and not having received a response from counsel for the
2  McDonald's to the May 17 Gagliardi letter or to the requests made at the May 18 meeting,
3  counsel for Osbelt sent another letter to Rumberger. Gagliardi concluded the letter by stating
4  "[p]lease regard this letter as the final request by Osbelt for a full inspection of the complete
5  books and records of NEWN ...." Gagliardi also provided a date for the inspection, May 24,
6  2007. A copy of Gagliardi's May 21, 2007, letter to Rumberger is attached as Exhibit K.

7    35.    On May 22, 2007, Fred Adam ("Adam"), another attorney representing the
8  McDonalds, responded to Gagliardi by e-mail. In his e-mail, Adam stated "the Magalia location
9  [is] not an option [for the inspection] since the office is located in the home of [the McDonalds]."
10  Adam went on to state that the McDonalds required an "express list of what was being
11  requested." A copy of Adam's e-mail to Gagliardi dated May 22, 2007 is attached as Exhibit L.

12    36.    Gagliardi responded by letter that same day, May 22, 2007.  In his letter,
13  Gagliardi rejected Adam's attempt to limit the inspection to certain specified documents, but
14  provided a non-exclusive list of categories of records that Osbelt wished to inspect and copy.
15  Gagliardi also pointed out that inasmuch as the McDonalds had improperly elected to maintain
16  the books and records of NEWN in their home, it was inappropriate to use that fact as a reason
17  for not allowing Osbelt access to the records. Gagliardi again stated that Osbelt wished to
18  conduct the inspection on May 24, 2007.  A copy of Gagliardi's May 22, 2007, letter to Adam is
19  attached as Exhibit M.

20    37.    On May 23, 2007, Adam sent an e-mail at 6:39 pm to counsel for Osbelt in which
21  he stated: "[h]ope to get you a response to document request later tonight." A copy of Adam's
22  email to Marc van Niekerk dated May 23, 2007, is attached as Exhibit N.

23    38.    Later that evening, Van Niekerk sent Adam an e-mail at 8:06 pm noting that
24  Osbelt had still not received confirmation that she would be allowed access to NEWN's books
25  and records the next day, May 24, 2007, and requesting such confirmation. A copy of Van
26  Niekerk's e-mail to Adam dated May 23, 2007, is attached as Exhibit O.

27

28

❸
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

1    39.    A few minutes later, Adam responded to Van Niekerk's e-mail stating "tomorrow

2    won't work due to too short notice for scheduling, but we are trying to schedule for Friday [May

3    25]." A copy of Adam's e-mail to Van Niekerk dated May 23, 2007, is attached as Exhibit P.

4    40.    On May 24, 2007, counsel for the McDonalds sent a letter to Gagliardi

5    purportedly responding to Osbelt's requests for access to NEWN's books and records, but

6    advancing numerous spurious arguments why access was not possible. Again, Adam specifically

7    informed counsel that Osbelt would not be allowed to inspect the records where they are

8    maintained. Adam went on to state that "it is our client's sincere belief that the records and other

9    materials provided by our client to date, or already in Ms. Osbelt's possession, comply with your

10   client's document request ...." A copy of Adam's letter to Gagliardi dated May 24, 2007, is

11   attached as Exhibit Q.

12   41.    Counsel for Osbelt responded to Adam by letter dated May 25, 2007, refuting

13   each of Adam's contentions. Counsel for Osbelt reiterated Osbelt's request for access to source

14   documents, as opposed to spreadsheets and tables prepared by the McDonalds. A copy of the

15   letter dated May 25, 2007, from Van Niekerk to Goines is attached as Exhibit R.

16   42.    Five days later, on May 30, 2007, Goines responded to Van Niekerk's letter of

17   May 25, 2007. In his letter, Goines made it clear that the McDonalds would not be allowing

18   Osbelt access to the books and records of NEWN or allow Osbelt access to the books and records

19   where they are maintained. A copy of Goines' May 30, 2007, letter to Van Niekerk is attached as

20   Exhibit S.

21   43.    After filing this litigation, Osbelt served discovery on the McDonalds on August

22   1, 2007. Osbelt's discovery requests included requests for the production of all books and

23   records, including, but not limited to, source documents. The McDonalds again refused to

24   produce those documents.

25   44.    At the recent depositions of the McDonalds held October 17, 2007, and October

26   18, 2007, Osbelt again had requested production of all books and records, including, but not

27   limited to, source documents. Again, the McDonalds failed to produce these documents.

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

45.     At the deposition of David McDonald, it came to light that on or about April of 2007, the McDonalds caused NEWN to enter into "consulting" agreements with themselves. Under these purported agreements, Donna McDonald provides bookkeeping "consulting" services to NEWN and David McDonald provides CEO "consulting" services to NEWN. Previously, Donna and David McDonald had performed these functions as members and managers of NEWN and had received compensation through profits shared by all members and managers. Now, through these self-serving "consulting" agreements, the McDonalds have paid themselves hundreds of thousands of dollars for their services.

46.     On or about October 30, 2007, David McDonald, without the input of all members and managers, including Osbelt, or even the opportunity for them to provide input, unilaterally purported to order a capital call. The purported capital call did not comply with the terms and conditions of the Operating Agreement and was done for improper purpose. The McDonalds are using the capital call device in bad faith in order to better their majority position in the company, while diluting Osbelt's position.

47.     The McDonalds, collectively majority members and managers of NEWN and TCLE, with a joint 75% interest in the companies, have repeatedly violated their duties and obligations to Osbelt, a minority member and manager of NEWN and TCLE. Further, they have reneged on their offer to purchase Osbelt's interest in NEWN and/or caused NEWN to renege, thereby breaching a legally, binding contract.

## FIRST CAUSE OF ACTION

### (Breach of Contract: Agreement of Sale Against All Defendants)

48.     Osbelt incorporates by reference the allegations set forth above as though fully restated herein.

49.     On or about March 26, 2007, David McDonald, on behalf of NEWN and/or his own behalf and that of his wife, Donna McDonald, offered to purchase Osbelt's interest in NEWN for a purchase price of $1,886,063.80. McDonald specified that the offer was to be accepted or rejected that same day.

50. Osbelt accepted McDonald's offer that same day, March 26, 2007, as a consequence whereof a valid and enforceable agreement of sale of Osbelt's share in NEWN to the McDonalds and/or NEWN in exchange for payment by them to Osbelt of $1,886,063.80 was created.

51. Osbelt is, and at all times, was ready, willing, and able to complete performance under the agreement.

52. Without justification and in breach of its obligations under the agreement, the McDonalds and/or NEWN have failed to make payment to Osbelt of the agreed upon purchase price of $1,886,063.80 or any part thereof.

53. As a result of the McDonalds' and/or NEWN's breach of the Agreement, Osbelt has been damaged in an amount to be proven at trial, but in no event less than $1,886,063.80, plus interest and costs of suit.

## SECOND CAUSE OF ACTION

### (Breach of Contract: Operating Agreement Against Defendants David McDonald and Donna McDonald)

54. Osbelt incorporates by reference the allegations set forth above as though fully restated herein.

55. On or about May 13, 2004, Osbelt and the McDonalds entered into an Operating Agreement and Articles of Organization (the "Operating Agreement").

56. The authority of Members to participate in the management of NEWN is set forth in Section 5 of the Operating Agreement. Pursuant to Section 5 of the Operating Agreement, each of the Members "will participate in the management of the Company affairs...and... have exclusive authority to manage and conduct all the business of the Company, with all rights, powers and authority that are conferred by law or are necessary, convenient or appropriate for the managing of the Company's business ...." (Ex. A, § 5.)

57. Pursuant to Section 6.5 of the Operating Agreement, NEWN's books and records are to be maintained at its principal place of business and "[a]ll Members ... have the right on

⊕
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

28

1  reasonable notice to the Company to ... inspect and ... copy the books and records of the

2  Company ...." (Ex. A, § 6.5.)

3      58.    Osbelt has performed all of her obligations under the Operating Agreement except

4  those obligations which have been waived or excused. Further, Osbelt is, and at all times, was

5  ready, willing, and able to complete performance under the Operating Agreement.

6      59.    The McDonalds, without justification, have breached the Operating Agreement

7  by, inter alia:

8          59.1    Wrongfully excluding Osbelt from participating in management of

9                NEWN;

10          59.2    Failing to maintain the books and records at NEWN's principal place of

11                business in Redwood City;

12          59.3    Denying Osbelt access to NEWN's books and records for the purpose of

13                copying them, despite repeated requests therefor;

14          59.4    Causing the books and records of NEWN to reflect false allocation of

15                NEWN's profits to Osbelt;

16          59.5    Causing NEWN's accountants to prepare false financial statements on

17                behalf of NEWN;

18          59.6    Causing NEWN's accountants to prepare and file false income tax returns

19                on behalf of NEWN;

20          59.7    Failing to disclose interested transactions with NEWN;

21          59.8    Self-dealing with NEWN including, but not limited to: consulting

22                agreements, reimbursement of personal expenses and purported loans to

23                NEWN, all to the detriment of NEWN; and

24          59.9    Abusing their power as co-managers of NEWN by freezing out co-

25                manager Osbelt and making a capital call without the consent of all

26                members and co-managers of NEWN.

27

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

1    60.    As a result of the McDonalds' breach of the Operating Agreement, Osbelt has

2  been damaged in an amount to be proven at trial, but in no event less than $1,886,063.80, plus

3  interest and costs of suit.

## THIRD CAUSE OF ACTION

**(Breach of Fiduciary Duty Against Defendants David McDonald and Donna McDonald)**

6    61.    Osbelt incorporates by reference the allegations set forth above as though fully

7  restated herein.

8    62.    As Osbelt's fellow members in NEWN and as holders of the majority interest in

9  NEWN, the McDonalds owed Osbelt fiduciary duties of loyalty, good faith, candor, and fair

10  dealing.

11    63.    The McDonalds have breached their fiduciary duties to Osbelt by:

12          63.1    Wrongfully excluding Osbelt from participating in management of

13                  NEWN;

14          63.2    Failing to maintain the books and records at NEWN's principal place of

15                  business in Redwood City;

16          63.3    Denying Osbelt access to NEWN's books and records for the purpose of

17                  copying them, despite repeated requests therefor;

18          63.4    Causing the books and records of NEWN to reflect false allocation of

19                  NEWN's profits to Osbelt;

20          63.5    Causing NEWN's accountants to prepare false financial statements on

21                  behalf of NEWN;

22          63.6    Causing NEWN's accountants to prepare and file false income tax returns

23                  on behalf of NEWN;

24          63.7    Failing to disclose interested transactions with NEWN;

25          63.8    Self-dealing with NEWN including, but not limited to: consulting

26                  agreements, reimbursement of personal expenses and purported loans to

27                  NEWN, all to the detriment of NEWN; and

28

⊕
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

63.9   Abusing their power as co-managers of NEWN by freezing out co-
        manager Osbelt and making a capital call without the consent of all
        members and co-managers of NEWN.

64.    As a result of the McDonalds' breach of their fiduciary duties to Osbelt, Osbelt has been damaged in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### (Accounting Against Defendants David McDonald and Donna McDonald)

65.    Osbelt incorporates by reference the allegations set forth above as though fully restated herein.

66.    As Osbelt's fellow members in NEWN and as holders of the majority interest in NEWN, the McDonalds owed Osbelt fiduciary duties of loyalty, good faith, candor and fair dealing.

67.    The McDonald's have controlled the maintenance of NEWN's financial books and records and have excluded Osbelt from access thereto.

68.    Osbelt wishes to assign her membership interest in NEWN to the McDonalds against payment by the McDonalds pursuant to the formula set forth in the Operating Agreement.

69.    The payment due from the McDonalds is unknown and cannot be ascertained without an accounting of the receipts and disbursements of all NEWN transactions.

70.    The McDonalds have failed and refused, and continue to fail and refuse, to render such an accounting.

71.    The foregoing actions entitle Osbelt to an accounting against the McDonalds to determine the purchase price of Osbelt's interest in NEWN.

## FIFTH CAUSE OF ACTION

### (Slander Per Se Against Defendants David McDonald and Donna McDonald)

72.    Osbelt incorporates by reference the allegations set forth above as though fully restated herein.

73.    On information and belief, the McDonalds have been informing NEWN clients that Osbelt has left NEWN and the expert witness business "to get married and have babies."

1    74.    This statement by the McDonalds is false and known by the McDonalds to be

2  false and was uttered with malice.

3    75.    This statement by the McDonalds is injurious to Osbelt's professional and/or

4  business reputation.

5    76.    The foregoing entitles Osbelt to compensatory and punitive damages for which

6  the McDonalds are liable, according to proof.

7                         **SIXTH CAUSE OF ACTION**

8  **(Violations of Beverly-Killea Limited Liability Company Act §§ 17058, 17106 Against**

9                    **Defendants David McDonald and Donna McDonald)**

10    77.    Osbelt incorporates by reference the allegations set forth above as though fully

11  restated herein.

12    78.    The McDonalds have violated Sections 17058, 17106 of the Beverly-Killea

13  Limited Liability Company Act by:

14             78.1    Failing to maintain the books and records of NEWN as they

15                        relate to the internal affairs of NEWN for the current and

16                        past four fiscal years; and

17             78.2    Refusing to allow Osbelt to inspect and copy NEWN's

18                        books and records despite repeated, reasonable and

19                        appropriate requests.

20    79.    The foregoing entitles Osbelt to an order pursuant to Section 17106(f) that the

21  McDonalds provide Osbelt with the information and financial statements of NEWN and

22  reasonable expenses, including attorneys fees, pursuant to Section 17106(g).

23                       **SEVENTH CAUSE OF ACTION**

24    **(Corporate Waste Against Defendants David McDonald and Donna McDonald)**

25    80.    Osbelt incorporates by reference the allegations set forth above as though fully

26  restated herein.

27    81.    David and Donna McDonald, and each of them, wrongfully and intentionally

28  diverted NEWN's and TCLE's company assets for improper and unnecessary purposes, which

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

1  acts constitute corporate waste and gift. The McDonalds, joint majority members and managers
2  of NEWN and TCLE, had a duty not to permit corporate waste or to commit corporate waste
3  themselves.

4       82.    The McDonalds have wrongfully and intentionally diverted NEWN's and TCLE's
5  company assets for their own, personal use. Diversion of company assets includes, but is not
6  limited to, improperly using company assets to pay personal litigation expenses, improperly
7  paying themselves improper and excessive "consulting" fees, and improperly using company
8  assets for personal expenses.

9       83.    Most recently, the McDonalds have excluded Osbelt from management of the
10  companies and then proceeded to drain the company assets for their personal benefit.
11  Immediately after excluding Osbelt from management, The McDonalds caused NEWN to enter
12  into "consulting" agreements with themselves. Under the so-called "consulting" agreements,
13  Donna McDonald provides bookkeeping "consulting" services to NEWN and David McDonald
14  provides CEO "consulting" services to NEWN. Previously, the McDonalds did this same work
15  and received compensation through profits shared by the members. But, with Osbelt removed
16  from management, they now perform the same tasks as before, but receive hundreds of thousands
17  of dollars for their "consulting" services.

18       84.    The conduct of Defendants David and Donna McDonald, and each of them, was
19  not in good faith, nor did the McDonalds make any judgment, in the exercise of good faith, that
20  based on the circumstances of the transactions and self-dealing, of which they were fully aware,
21  that their actions and omissions were worthwhile to NEWN and TCLE and in those companies
22  bests interests. Rather, their actions directly interfered with the business of NEWN and TCLE by
23  diverting corporate assets out of the companies.

24       85.    The McDonalds, and each of them, aided and abetted, encouraged and rendered
25  substantial assistance to each other in accomplishing the wrongful conduct, acts and omissions
26  and wrongful goals complained of herein. In abiding and abetting and substantially assisting the
27  commission of these wrongful acts, each of the McDonalds realized that his or her conduct

28

1  would substantially assist the accomplishments of the wrongful conduct, wrongful goals, and
2  wrongdoing.

3      86.     As a result of the McDonalds' wrongful conduct, and the wrongful conduct of
4  each of them, NEWN, TCLE and Osbelt have suffered and continue to suffer economic and non-
5  economic damages. NEWN, TCLE and Osbelt has also suffered other general and specific
6  damages, including, but not limited to, lost profits, unwarranted financial losses and expenses
7  and alleged dilution of interest in the companies. Osbelt is entitled to disgorgement of corporate
8  waste attributed to the McDonalds' wrongful actions and self-dealing and any compensation
9  wrongfully obtained by them thereby from expense payments, consulting fees, alleged dilution of
10 interest any other compensation that would not have been paid but for their wrongful conduct.

11                                **EIGHT CAUSE OF ACTION**

12       **(Abuse of Control Against Defendants David McDonald and Donna McDonald)**

13     87.     Osbelt incorporates by reference the allegations set forth above as though fully
14 restated herein.

15     88.     The McDonalds dominated and controlled the business affairs of NEWN and
16 TCLE through their majority stock ownership, member and management positions, financial
17 dealings and otherwise. The McDonalds abused their control of these companies by acting
18 contrary to the companies' best interest and instead acting to further their own private financial
19 and personal interests.

20     89.     The McDonalds, and each of them, knew or should have known that their acts and
21 omissions constituted a breach of duty and an abuse of control. Each Defendant further gave
22 substantial assistance to the other Defendant and in doing so aided and abetted the violations by
23 the other Defendant. Without such assistance and encouragement of one Defendant to another,
24 the wrongful acts could not have occurred.

25     90.     In violation of their contractual and statutory duties, the McDonalds abused their
26 positions of control by entering into self-interested transactions without the approval or even the
27 consultation of any of NEWN's and TCLE's disinterested members or managers. These
28 transactions included, but were not limited to, causing NEWN and TCLE to pay the McDonalds

❸
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

1  personal and home expenses, causing NEWN to become indebted to the McDonalds, causing
2  NEWN to require unwarranted and improper capital calls, and causing TCLE to abandon patent
3  claims against its interests.

4      91.    As a result of the McDonalds' wrongful conduct, and the wrongful conduct of
5  each of them, NEWN, TCLE and Osbelt have suffered and continue to suffer economic and non-
6  economic damages. NEWN, TCLE and Osbelt have also suffered other general and specific
7  damages, including, but not limited to, lost profits, unwarranted financial losses and expenses
8  and alleged dilution of interest in the companies. Osbelt is entitled to disgorgement of corporate
9  waste attributed to the McDonalds' wrongful actions and self-dealing and any compensation
10  wrongfully obtained by the McDonalds thereby from expense payments, consulting fees, alleged
11  dilution of interest and any other compensation that would not have been paid but for their
12  wrongful conduct.

13                          **NINTH CAUSE OF ACTION**

14              **(Conversion Against Defendants David McDonald and Donna McDonald)**

15      92.    Osbelt incorporates by reference the allegations set forth above as though fully
16  restated herein.

17      93.    During all relevant times while Osbelt was a member of NEWN and TCLE, she
18  was and still is entitled to a share of the profits of these companies.

19      94.    Contrary to their contractual and statutory duties, the McDonalds wrongfully
20  misappropriated and converted the assets of NEWN, TCLE and Osbelt for themselves. This
21  conversion includes, but is not limited to, converting Osbelt's interest in NEWN into their own
22  through unwarranted and improper capital calls, converting NEWN's and Osbelt's assets and
23  profits into their own through excessive and improper "consulting" fees payable to themselves,
24  converting NEWN's and Osbelt's assets into their own through false and improper debt
25  obligations payable to themselves, converting NEWN, TCLE and Osbelt's assets into their own
26  through wrongful and improper payment to themselves.

27      95.    Osbelt has demanded the immediate return of these assets, but the McDonalds
28  have failed and refused, and continue to fail and refuse, to return the assets to NEWN, TCLE and

❸
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

1 | Osbelt. A copy of Osbelt's written demand is attached to the First Amended Complaint as
2 | Exhibit T.

3 |     96.    The McDonalds' conversion of these assets was with malice, oppression, and a
4 | willful and conscious disregard for the rights of Osbelt. The McDonalds misappropriated and
5 | converted company assets and funds for their personal use without any approval or consultation
6 | of Osbelt or any other disinterested member or manager of the companies. They acted with
7 | reckless indifference and willful and conscious disregard of any person who had an interest in the
8 | converted property and, particularly, the rights of Osbelt.

9 |     97.    Further, after knowledge and notice of Osbelt's interest in the converted assets
10 | was given to the McDonalds, they failed and refused, and continue to fail and refuse, to return the
11 | assets. By reason of these acts, Osbelt has been oppressed and seeks punitive and exemplary
12 | damages.

13 |     98.    In addition to exemplary and punitive damages, NEWN, TCLE and Osbelt have
14 | additionally suffered and continue to suffer economic and non-economic damages. NEWN,
15 | TCLE and Osbelt have also suffered other general and specific damages, including, but not
16 | limited to, lost profits, unwarranted financial losses and expenses and alleged dilution of interest
17 | in the companies. Osbelt is entitled to disgorgement of corporate waste attributed to the
18 | McDonalds' wrongful actions and self-dealing and any compensation wrongfully obtained from
19 | the McDonalds thereby from expense payments, consulting fees, alleged dilution of interest and
20 | any other compensation that would not have been paid but for their wrongful conduct.

21 | **TENTH CAUSE OF ACTION**

22 | **(Cancellation of Instrument/Restitution Based on Rescission Against Defendants David**
23 | **McDonald and Donna McDonald)**

24 |     99.    Osbelt incorporates by reference the allegations set forth above as though fully
25 | restated herein.

26 |     100.    The McDonalds, as members and managers of NEWN and TCLE, caused NEWN
27 | and TCLE to enter into transactions with the McDonalds. The McDonalds had a financial
28 | interest in these transactions which conflicted with the best interests of NEWN, TCLE and,

⊕
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

1    minority member and manager, Osbelt. The McDonalds purportedly made loans to NEWN,

2    causing NEWN to be indebted to the McDonalds for hundreds of thousands of dollars. The

3    McDonalds also caused NEWN to enter into "consulting" agreements with themselves which

4    purport to require NEWN to pay the McDonalds hundreds of thousands of dollars. The

5    McDonalds further caused NEWN to make improper capital calls which have purported to dilute

6    Osbelt's interest in NEWN while increasing their own interest.

7        101.    Despite their conflict of interest, the McDonalds failed to have a disinterested

8    member or manager review and/or approve these transactions and agreements and, in fact, none

9    of these agreements and transactions were approved by Osbelt or any other disinterested member

10   or manager of NEWN. Further, the McDonalds never allowed Osbelt or any other disinterested

11   member or manager of NEWN even an opportunity to vote on, approve, object or otherwise

12   provide input as to these agreements and transactions or otherwise provide input or object. In

13   fact, the McDonalds never even disclosed these agreements and transactions to Osbelt until well

14   after they were completed or not at all.

15       102.    Osbelt hereby intends service of copies of the summons and this First Amended

16   Complaint as notice of rescission of the contracts and transactions.

17       103.    The McDonalds, as majority members and managers, entered into these self-

18   serving contracts and transactions for the sole benefit of themselves and at the detriment of

19   NEWN, TCLE and Osbelt. These transactions are sham: the McDonalds entered into these

20   transactions and/or caused NEWN and TCLE to enter into the transactions to injure and defraud

21   Osbelt and the companies.

22       104.    In addition to exemplary and punitive damages, NEWN, TCLE and Osbelt have

23   additionally suffered and continue to suffer economic and non-economic damages. NEWN,

24   TCLE and Osbelt have also suffered other general and specific damages, including, but not

25   limited to, lost profits, unwarranted financial losses and expenses, and alleged dilution of interest

26   in the companies. Osbelt is entitled to disgorgement of corporate waste attributed to the

27   McDonalds' wrongful actions and self-dealing and any compensation wrongfully obtained by the

28

❸
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

1  McDonalds thereby from expense payments, consulting fees, alleged dilution of interest, and any

2  other compensation that would not have been paid but for their wrongful conduct.

3                              **ELEVENTH CAUSE OF ACTION**

4      **(Unjust Enrichment Against Defendants David McDonald and Donna McDonald)**

5      105.    Osbelt incorporates by reference the allegations set forth above as though fully

6  restated herein.

7      106.    By their wrongful acts and omissions, the McDonalds, and each of them, have

8  been unjustly enriched at the expense of and detriment to NEWN, TCLE and Osbelt who were

9  meanwhile unjustly deprived.

10     107.    Osbelt, on behalf of NEWN, TCLE and herself, seeks restitution from The

11  McDonalds, and each of them, and seeks an order of this Court disgorging all improper profits,

12  fees, payments, benefits and other compensations obtained by the McDonalds from their

13  wrongful conduct and breaches of fiduciary duties.

14                              **TWELFTH CAUSE OF ACTION**

15      **(Alter Ego Liability Against Defendants David McDonald and Donna McDonald)**

16     108.    Osbelt incorporates by reference the allegations set forth above as though fully

17  restated herein.

18     109.    There exists, and at all times herein mentioned there existed, a unity of interest

19  and ownership between the McDonalds and NEWN, such that any individuality and separateness

20  between the McDonalds and NEWN ceased, and these limited liability companies are the alter

21  ego of the McDonalds in that they wholly disregarded any of the obligations imposed upon them

22  by the operating agreement and California Corporations law.  The McDonalds dominated and

23  controlled the business of NEWN, despite the rights of other Osbelt and other members of the

24  company.

25     110.    Adherence to the fiction of the separate existence of NEWN, as an entity distinct

26  from the McDonalds, would permit an abuse of the limited liability company privilege and would

27  sanction fraud or otherwise promote injustice as the McDonalds have run NEWN in bad faith

28  with utter disregard to the Operating Agreement and the rights of Osbelt and the other members.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

1     The McDonalds used the limited liability companies for their personal benefit and not for

2     company business, and, in doing so, acted to the detriment of NEWN and the other members.

3         111.    To the extent that the trier of fact finds that NEWN, not the McDonalds, breached

4     the agreement to purchase Osbelt's interest in NEWN as alleged in Osbelt's First Cause of

5     Action, the McDonalds should be jointly and severally liable as alter-ego Defendants.

6                              **PRAYER**

7         WHEREFORE, Osbelt prays for judgment jointly and severally against the McDonalds to

8     the First Cause of Action and against the McDonalds as to the remaining causes of action as

9     follows:

10           a.    For damages according to proof at trial, but in no event less than

11                 $1,886,063.80;

12           b.    For an accounting;

13           c.    For an order pursuant to .Section 17106(f) of the Beverly-Killea Limited

14                 Liability Company Act;

15           d.    For punitive damages as determined by a jury;

16           e.    For past and future profits;

17           f.    For pre-judgment interest at the legal rate;

18           g.    For costs of suit, including attorneys' fees;

19           h.    For such other and further relief as this Court deems just and proper.

20

21     Dated: November _3 ᴜ_, 2007         **COTCHETT, PITRE & McCARTHY**

22

23                             By: _____

24                                SEAN E. PONIST

                                *Attorneys for Plaintiff Jennifer Osbelt*

25

26

27

28

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

1    **JURY DEMAND**

2       Plaintiff demands trial by jury on all issues so triable.

3

4    DATED: November **30** , 2007          **COTCHETT, PITRE & McCARTHY**

5

6                                          By_____

7                                                  SEAN E. PONIST
                                            *Attorneys for Plaintiff Jennifer Osbelt*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28