WILLIAM J. GOINES (SBN 61290)
KAREN ROSENTHAL (SBN 209419)
CINDY HAMILTON (SBN 217951)
GREENBERG TRAURIG, LLP
1900 University Avenue, Fifth Floor
East Palo Alto, California 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508
Email: goinesw@gtlaw.com
       hamiltonc@gtlaw.com

Attorneys for Defendants and Cross-Complainants
David D. McDonald, Donna K. McDonald,
National Expert Witness Network and Technology
CLE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER OSBELT,<br><br>              Plaintiff(s);<br><br>v.<br><br>DAVID D. McDONALD, DONNA K. McDONALD, and DOES 1-10, inclusive,<br><br>              Defendant(s).<br><br>AND RELATED CROSS-ACTION | Case No. CV 08-0534 PJH<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>Date: May 21, 2008<br>Time: 9:00 a.m.<br>Dept: Courtroom 3, 17th Fl. |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. PROCEDURAL HISTORY AND STATEMENT OF THE FACTS.....................................1

    A. Formation of NEWN...................................................................................................2

    B. Buy-Out Discussions...................................................................................................2

    C. Osbelt Accusations to Third Parties of the McDonalds' 401(K) Fraud......................3

    D. Osbelt Forces NEWN to Abandon Its Patent Applications ........................................4

    E. NEWN's Operations After Osbelt's Departure ...........................................................4

III. GROUNDS FOR REMOVAL JURISDICTION ...................................................................5

IV. APPLICABLE LEGAL STANDARD ...................................................................................6

V. ARGUMENT..........................................................................................................................7

    A. Plaintiff's Complaint Need Not Allege Obvious Federal Claims To Be Subject To ERISA Pre-Emption...................................................................................................7

    B. Plaintiffs State Law Claims, As Those Raised In *Metropolitan v. Taylor*, Relate To An Employee Benefit Plan And Are Preempted By ERISA ..................................8

    C. Plaintiff Is Not Permitted To "Plead Around" Her ERISA Claims To Stay Out Of Federal Court .................................................................................................................9

    D. Plaintiffs' Request For Attorneys' Fees Should Be Denied ......................................10

VI. CONCLUSION.....................................................................................................................11

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

ARCO Envt'l Remediation L.L.C. v. Dep't of Health and Envt'l Quality of State of Mont.
213 F.3d 1108 (9th Cir. 2000) .................................................................................. 10

Braco v. MCI Worldcom
138 F. Supp. 2d 1260 (2001) .................................................................................. 7, 8

Caterpillar v. Williams
482 U.S. 386 (1987) .................................................................................................. 7

Circle Indusl, USA v. Parke Constr. Group, Inc.
183 F.3d 105 (2d Cir. 1999) .................................................................................... 10

Franchise Tax Board v. Constr. Laborers Vacation Trust
463 U.S. 1 (1983) ...................................................................................................... 6

King v. Aventis Paseteur
210 F. Supp 2d 1201 (D.Or 2002) .......................................................................... 10

Louisville & Nashville Railway Co. v. Mottley
211 U.S. 149 (1908) .................................................................................................. 7

Metropolitan Life Ins. Co. v. Taylor
481 U.S. 58 (1987) ............................................................................................ 7, 8, 9

Pilot Life Ins. Co. v. Dedeaux
481 US 41 (1987) ...................................................................................................... 9

Quayle v. MCI Worldcom
2001 WL 1329594 .................................................................................................... 7

Riggs v. Continental Banking Co.
678 F. Supp. 236 (N.D. Cal. 1988) .......................................................................... 5

Sparta Surgical v. Nat Ass'n of Sec Dealers
519 F3d 1208 (9th Cir. 1998). ................................................................................ 10

Valdes v. Wal-Mart Stores, Inc.
199 F.3d 290 (5th Cir. 2000) .................................................................................. 10

## FEDERAL STATUTES

28 U.S.C. § 1441(a) ............................................................................................................ 7

28 U.S.C. 1447(c) ............................................................................................................ 10

29 U.S.C. 1132 (ERISA Section 502(a)) ........................................................................... 8

I. **INTRODUCTION**

Plaintiff Jennifer Osbelt ("Osbelt or "Plaintiff") was deposed on January 4, 2008, at which time she made clear that misappropriation of her money through a 401(k) plan, and the damages resulting therefrom, is part of her lawsuit against David McDonald and Donna McDonald (the "McDonalds"). Osbelt further testified that the McDonalds failed to obtain appropriate 401(k) paperwork from her before taking her money and transferring it into the National Expert Witness Network (NEWN) 401(k) and profit sharing plan, and the penalties that she has paid as a result that she is seeking in damages. Osbelt has contacted NEWN's 401(k) administrator Bidwell Consulting and institutional investor Edward Jones and threatened to add them as parties to this lawsuit based on their involvement with NEWN's 401(k) plan if they did not authorize the return of her money.

For these reasons, Osbelt's complaint arises under 29 U.S.C. § 1002 et seq. as Osbelt is a "participant" and "beneficiary" under a 401 (k) plan and is seeking to "enjoin an act or practice which violates" ERISA or to obtain appropriate relief to address violations. Plaintiff argues in her moving papers that her ERISA claims are minor and can be adjudicated in state court; however, a long history of powerful ERISA pre-emption case law indicates Congress' intent that all ERISA claims be determined exclusively by federal courts.

Accordingly, the Court should deny Plaintiff's Motion to Remand.

II. **PROCEDURAL HISTORY AND STATEMENT OF THE FACTS**

Plaintiff filed suit on June 5, 2007, and amended her Complaint on December 4, 2007. Plaintiff's First Amended Complaint contains twelve causes of action, including breach of contract, breach of fiduciary duty, conversion, and corporate waste. Defendants filed a cross-complaint for interference with prospective economic advantage, fraud, breach of fiduciary duty, and slander. The Complaint and Cross-Complaint arise out of David McDonald, Donna McDonald, ("the McDonalds") and Plaintiff's ownership of a company called National Expert Witness Network ("NEWN"). NEWN is a California Limited Liability Company who provides experts and consultants with decades of professional experience, technical skills and expertise in

high technology discipline to law firms whose clients require the use of expert witnesses in litigation.

### A. Formation of NEWN

NEWN was formed in 2002 when the McDonalds invested their savings to start the company. NEWN became very successful and the McDonalds looked to expand their operations and take on Plaintiff as a partner in the company who could take over operations when they retired. On or about May 13, 2004, Osbelt signed the NEWN Operating Agreement and Articles of Organization (the "Operating Agreement"). In exchange for her future services to NEWN, Osbelt was given a 25% ownership interest NEWN in exchange for her services to NEWN.

The company operated successfully and the partners worked well together until early 2007, when Osbelt sent David McDonald an email accusing him of falsifying a loan that the McDonalds made to NEWN in the early days of the company. The McDonalds had invested large amounts of their personal finances to form NEWN and were offended by the accusation of Osbelt that they were being dishonest and fabricating a loan to the company.

### B. Buy-Out Discussions

The personal relationship between the parties deteriorated after Osbelt's accusation and they both agreed that the best course of action was for the McDonalds to purchase Osbelt's interest in NEWN. The formula used to calculate the purchase of member's shares was set forth in the Operating Agreement, and the McDonalds made a preliminary and inaccurately high offer to Osbelt based on a miscalculation under Section 8.5 of the Operating Agreement. Osbelt acknowledged the mistaken calculation, and the parties continued to negotiate the terms of a buyout.

After the parties discussed a buyout but before any details were finalized, Osbelt began to engage in conduct intended to harm NEWN. She refused to renew a line of credit NEWN held with U.S. Bank, despite guarantees from U.S. Bank that she would be removed from the note after the buyout was completed. This led to a default on the line of credit. NEWN did not have sufficient resources to pay off the loan, and was forced to do a capital call, which was paid

by the McDonalds personally. Osbelt did not answer the capital call, and accordingly her percentage of ownership interest was reduced.

### C. Osbelt Accusations to Third Parties of the McDonalds' 401(K) Fraud

The founders of NEWN always intended to add a 401(k) plan for its employees when the company became sufficiently profitable. Decl. of David. McDonald ¶ 2. In December 2006, a meeting was held at the NEWN headquarters regarding the implementation of a 401(k) plan. McDonald Decl. ¶ 2. In attendance were all NEWN employees, all NEWN owners, including the Plaintiff, NEWN's bookkeeping CPA, tax CPA and the 401(k) administrators, Bidwell Consulting and institutional investor Edward Jones. McDonald Decl. ¶ 2. At this juncture, all NEWN employees and owners, including Plaintiff, provided Edward Jones with a signed document containing their home addresses and tax ID numbers giving Edward Jones the authorization to set up their 401(k) and profit sharing contributions. McDonald Decl. ¶ 2.

In July 2007 Plaintiff wrote a letter to NEWN's 401(k) Profit Sharing Plan's administrators Bidwell Consulting and institutional investor Edward Jones accusing the McDonalds of committing "an intentional act of fraud" with NEWN's 401(k) plan. A true and correct copy of this letter is attached to the Declaration of David McDonald as Exhibit A. The McDonalds received an email from Bidwell Consulting detailing a conversation they had with Osbelt, where Osbelt made the following accusations:

- Osbelt accused Bidwell Consulting of "conspiring with NEWN to withhold her retirement money illegally" Ex. B ¶ 7

- Osbelt accused the McDonalds of having "embezzled and stolen money from her" Ex. B ¶ 9

- Osbelt accused Bidwell Consulting of being "in on it" and being part of the "embezzlement and theft". Ex. B ¶ 10

- Osbelt called Mr. Banathy of Bidwell Consulting "stupid". Ex. B ¶ 11

- Osbelt threatened to "join [Bidwell Consulting] in a lawsuit" that "would cost [Bidwell Consulting] a lot of money in legal fees" Ex. B ¶ 8

- Osbelt told Creasia Gale of Bidwell Consulting that "she would go to jail for helping embezzle money from [Osbelt]. Ex. B

A true and correct copy of this email relaying conversation with Osbelt from Bidwell Consulting is attached to the Declaration of David McDonald as Exhibit B.

Osbelt's slanderous and libelous comments have damaged the reputation and business relationship between NEWN on the one hand and Bidwell and Edward Jones on the other.

### D. Osbelt Forces NEWN to Abandon Its Patent Applications

In addition to these slanderous comments, Osbelt has refused to sign USPTO applications for patents conceived by David McDonald and Osbelt for which NEWN invested approximately $500,000 in development and attorneys fees. To complete the patent application process, all individuals listed as co-inventors are required to participate in the patent application process or the patent applications expire and are considered abandoned. The loss of these patents has resulted in substantial revenue loss in the form of valuable licensing rights for the other co-inventors.

### E. NEWN's Operations After Osbelt's Departure

All actions taken by the McDonalds following Osbelt's departure have been in strict compliance with the Corporations Code, and necessary for NEWN to continue operations.

After April 25, 2007 Osbelt remained a member of NEWN but due to the high level of distrust between her and the McDonalds she did not perform any services for NEWN or participate in any of the day to day operations of NEWN. Because Osbelt was no longer performing services for NEWN, the McDonalds revised the compensation structure to pay themselves as consultants performing services for NEWN, a course of action permitted by the Operating Agreement. Due to market conditions, NEWN has suffered financially over the past several months and so the McDonalds have not received payment in several months.

The original NEWN Operating Agreement was a template downloaded from the internet and revised by the McDonalds. Over time, the McDonalds learned that provisions of the Operating Agreement were inconsistent with the requirements of the Beverly-Killea Limited Liability Company Act, and so the McDonalds sought to revise it. On October 12, 2007 the McDonalds approved a First Amended and Restated Operating Agreement ("New Operating

1  Agreement"), and sent a courtesy copy to Osbelt whose signature and approval were not
2  required under the terms of the Original Operating Agreement.

3  Osbelt's lawsuit against the McDonalds compounded NEWN's financial situation, as
4  NEWN's two other members were forced to devote attention away from NEWN to defend this
5  lawsuit. The rising attorney's fees for the McDonalds to defend this action led the McDonalds
6  to vote for NEWN to have a second capital call on October 20, 2007. Osbelt did not answer this
7  capital call, and her percentage ownership interest was reduced to 19.24%.

8  Under the New Operating Agreement, the McDonalds were permitted to purchase
9  Osbelt's 19.24% ownership interest in NEWN. On November 26, 2007, the McDonalds sent
10 Osbelt a letter notifying her of their intention to purchase her interest based on the calculated
11 purchase price set forth in the New Operating Agreement of $266,641.79. As of December 10,
12 2007 Osbelt's interest in NEWN was purchased by the McDonalds.

13 **III.    GROUNDS FOR REMOVAL JURISDICTION**

14 This action falls under 29 USC 1132(a)(3), ERISA's civil enforcement scheme, as
15 Plaintiff is a "participant, beneficiary, or fiduciary" who is seeking to enjoin a practice in
16 violation of ERISA or to obtain appropriate relief to address violations: "A civil action may be
17 brought…(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which
18 violates any provision of this subchapter or the terms of the plan, or (B) to obtain other
19 appropriate relief (i) to redress such violations or (ii) to enforce any provision of this subchapter."
20 29 USC 1132(a)(3).

21 On January 4, 2008 and January 9, 2008, the deposition of Plaintiff and Cross-Defendant
22 Jennifer Osbelt was taken and it first became ascertainable to Defendants that this case was
23 removable to federal court. Riggs v. Continental Banking Co. 678 F. Supp. 236 (N.D. Cal. 1988).

24 Despite her earlier accusations of 401(k) fraud by the McDonalds to third parties,
25 Plaintiff's original and First Amended Complaint did not specifically indicate an ERISA claim or
26 damages based on any mismanagement or misappropriation of Plaintiffs money through NEWN's
27 401(k) plan. However, in deposition, Plaintiff made clear that she is accusing the McDonalds of
28 fraud and/or misappropriation of her money through NEWN's 401(k) plan and that she is seeking

to have funds placed in her behalf into the NEWN 401(k) plan disgorged so that she doesn't have to pay tax penalties. Plaintiff testified in great detail during her deposition about the nature of her ERISA claims against the McDonalds:

> Q. And you have accused the McDonalds of taking your 401(k) and pension profit sharing plan in this case; is that true?
>
> A. That's correct.
>
> Q. What bases do you have to say that?
>
> A. Well, I never agreed to fund it, number one. Number two, for the 401(k) plan, I never signed a salary reduction form...
>
> Q. So they stole your money?
>
> A. I don't know if they stole it. They took my money and put it in this plan without my salary reduction form or a salary reduction form. So I'd already funded my IRA, and then they went ahead and put extra money into this plan without my permission and it exceeded my maximum for the year...
>
> Q Do you have any evidence that funds are not sitting in a 401(k) account for you that were distributed to a 401(k) account for the benefit of Jennifer Osbelt from NEWN?
>
> A. I never approved them taking the money and putting it in this account....
>
> Q. Have you had to pay any penalties, have you had to pay any taxes, have you had to pay an interest as a result of that?
>
> A. Yes, I have to take my money out of my Prudential account and pay an extra 10 percent penalty.
>
> Q. Have you done that?
>
> A. No. Because I'm disputing them putting money inside this 401(k) plan without my permission.

Deposition of Jennifer Osbelt 165:21-166:21; 167:10-167:15; 168:11-19. A true and correct copy of excerpts from the Deposition of Jennifer Osbelt is attached to the Declaration of Cindy Hamilton as Exhibit A.

## IV. APPLICABLE LEGAL STANDARD

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant...to the district court of the United States for the district and division embracing the place where such action is pending." Franchise Tax Board v. Constr. Laborers Vacation Trust, 463 U.S. 1, 7-8 (1983).

An action originally filed in state court may be removed if the district court could have exercised jurisdiction over such action if initially filed there. 28 U.S.C. § 1441(a).

## V. ARGUMENT

### A. Plaintiff's Complaint Need Not Allege Obvious Federal Claims To Be Subject To ERISA Pre-Emption

Plaintiffs primary argument is that under the "well-pleaded complaint rule", the claim or right arising under federal law must appear well-pleaded from the complaint, and that because Plaintiff's complaint contains only state law causes of action, it is not removable. Louisville & Nashville Railway Co. v. Mottley 211 U.S. 149 (1908). However, "a significant exception to the well-pleaded complaint rule is found in the 'complete preemption doctrine'". Quayle v. MCI Worldcom 2001 WL 1329594, citing Caterpillar v. Williams, 482 U.S. 386 at 393-394 (1987).

The complete preemption doctrine dictates that even a complaint containing exclusively state law causes of action must be removed if the underlying basis for these claims involves an issue of exclusive federal jurisdiction such as ERISA. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987) Under this doctrine, the force of certain federal statutes is considered to be so "extraordinary" that it "converts and ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Id.at 66. Even where a complaint purports to raise only state-law claims, a case may still be removed if the allegations are uniquely federal in nature". Quayle, supra, citing Metropolitan, at 63-64. "In these cases, even a well-pleaded state law complaint can be properly removed to federal court". Braco v. MCI Worldcom, 138 F. Supp. 2d 1260 at 1265 (2001). A state law cause of action can therefore assume a federal posture in cases where a statutory scheme has "extraordinary preemptive force". Caterpillar at 393.

The preemption power of ERISA is so strong that Plaintiff need not specifically mention any federal statute under which her claims arise for her Complaint to be subject to removal; ERISA is one of only two federal acts who are subject to this rigid preemption doctrine. "In the 'many years' of the complete pre-emption doctrine, the Supreme Court has identified only two federal acts whose preemptive force is so 'extraordinary' as to warrant removal of any 'well

pleaded' state law claim: (1) the Labor Management Relations Act ("LMRA")(citations omitted) and (2) the Employee Retirement Income Security Act ("ERISA"). Braco at 1265. Therefore, although Plaintiffs Complaint lists traditional state court causes of action such as "breach of fiduciary duty" and "conversion", based on Plaintiff's deposition testimony it becomes clear that the facts underlying these causes of action are the McDonalds placement and alleged misappropriation of Plaintiff's money into NEWN's 401(k) and profit sharing plan. "Contrary to their contractual and statutory duties, the McDonalds wrongfully misappropriated and converted the assets of NEWN, TCLE, and Osbelt for themselves…Osbelt has demanded the immediate return of these assets, but the McDonalds have failed and refused, and continue to fail and refuse, to return the assets to NEWN, TCLE, and Osbelt." First Amended Complaint ¶ 94, 95.

     B. <u>Plaintiffs State Law Claims, As Those Raised In *Metropolitan v. Taylor*, Relate To An Employee Benefit Plan And Are Preempted By ERISA</u>

In Metropolitan, an employee named Taylor brought common law and tort claims against his employer arising out of the employee's termination after a dispute ensued regarding whether the employee was disabled. Metropolitan removed the suit to federal court alleging federal question jurisdiction claiming that Taylor's claims "relate to an employee benefit plan". Like the Plaintiff in this action, Taylor argued that the action couldn't be removed because his Complaint contained only state law causes of action. The Court found this argument unpersuasive as the federal nature of the claims need not be obvious from the complaint. "…the touchstone of the federal district court's removal jurisdiction is not the 'obviousness' of the preemption defense but the intent of Congress". Id. at 1548.

Congress had made clear that claims relating to ERISA violations must be heard in federal court. "Congress has manifested an intent to make causes of action within the scope of the civil enforcement provisions of 29 U.S.C. 1132 (ERISA Section 502(a)) removable to federal court….accordingly, this suit, though it purports to raise only state law claims, is necessarily federal in character by virtue of the clearly manifested intent of congress." Metropolitan at 1548. Metropolitan makes clear that all ERISA claims, even those that appear to be couched in state law causes of action, must be determined by a federal court. Osbelt is a participant and beneficiary

under NEWN's 401(k) plan and is seeking 1) adjudication regarding whether the McDonalds complied with ERISA in managing its 401(k) account and 2) "appropriate relief to redress such violations" in the form of disgorgement and possibly reimbursement of tax penalties.

Plaintiff acknowledges in her moving papers that her ERISA claims would have to be adjudicated in state court but seems to argue that her ERISA claims are so 'minor' that a state court can handle it. Specifically, Plaintiff's moving papers state: "The claim of the 401(k) funds being improperly placed will not require an interpretation of ERISA, but a simple analysis of the consent and authority had by the defendants to do so". Moving papers, p.11, line 3-5. This argument completely misses the point of Metropolitan and the powerful preference by Congress and federal courts as manifested in the complete preemption doctrine that all ERISA claims, even minor ones, be adjudicated in federal court.

Ironically, Plaintiff argues that adjudication of regulation of the relationship between a plan administrator and participant would unfeasibly require development of 'federal common law'. In fact federal courts do recognize federal common law, which they are expected to use in ERISA related cases, through development of "federal common law of rights and obligations under ERISA-regulated plans". Pilot Life Ins. Co. v. Dedeaux, 481 US 41, 56 (1987).

C. Plaintiff Is Not Permitted To "Plead Around" Her ERISA Claims To Stay Out Of Federal Court

Plaintiff takes inconsistent positions in her moving papers. On page 2 of Plaintiff's brief, she argues that "no such [ERISA] claim has been made in the complaint, nor is one going to be made at trial" (moving papers, p.2 line 14-15), then later in the moving papers, Plaintiff argues "The claim of the 401(k) funds being improperly placed will not require an interpretation of ERISA, but a simple analysis of the consent and authority had by the defendants to do so", (Moving papers, p.11, line 3-5) admitting that the issue will be put before state court if remanded. Plaintiff's complaint does not mention ERISA in its breach of fiduciary duty and conversion causes of action, yet in deposition and in Plaintiff's history of communications to third parties she makes clear that she is making 401(k) based claims in this case and seeking damages based on ERISA violations.

Plaintiff's First Amended Complaint therefore improperly attempts to "plead around" her ERISA claims to avoid federal court. "Nonetheless, a plaintiff may not plead around a federal question if the plaintiff's claim "necessarily depends" on federal law; therefore, federal question jurisdiction exists when federal law is a "necessary element of one of the well-pleaded state claims" even if the plaintiff attempts to ignore the federal issue". King v. Aventis Paseteur, 210 F. Supp 2d 1201 at 1206-1207 (D.Or 2002), citing ARCO Envt'l Remediation L.L.C. v. Dep't of Health and Envt'l Quality of State of Mont., 213 F.3d 1108, 1116 (9th Cir. 2000).

A plaintiff may not attempt to defeat removal by alleging only state law claims when the lawfulness of the defendants conduct depends on an area governed by exclusive federal jurisdiction. Sparta Surgical v. Nat Ass'n of Sec Dealers, 519 F3d 1208 (9th Cir. 1998).

### D. Plaintiffs' Request For Attorneys' Fees Should Be Denied

Plaintiff asks the Court for an award of attorney's fees and costs incurred as a result of removal pursuant to 28 U.S.C. § 1447(c). However, such fees and costs may not be awarded if Plaintiffs Motion to Remand is denied. See Circle Indusl, USA v. Parke Constr. Group, Inc, 183 F.3d 105, 109 (2d Cir. 1999)(the removal "statute does not authorize courts to award attorneys' fees when upholding a removal".) Therefore, if the Court denies Plaintiffs' Motion for the reasons set forth in this brief, their request for fees and costs much be denied.

Moreover, even if the Court were to grant Plaintiff's Motion, Plaintiff is not entitled to an award of fees and costs. The language of the statute confirms that such an award is discretionary. See 28 U.S.C. 1447(c) (providing that "an order remanding the case *may* require payment") (emphasis added). Fees and costs for improper removal cannot be awarded if the defendant had objectively reasonable grounds to believe removal was proper. Valdes v. Wal-Mart Stores, Inc., 199 F.3d 290, 292 (5th Cir. 2000).

Here, Defendant has numerous objectively reasonable grounds to believe removal of this action was legally proper. Plaintiff embarked on a mission to contact every conceivable person who had a hand in processing NEWN's 401(k) plan to convince them that the McDonalds "embezzled" money from her through NEWN's 401(k) plan. Plaintiff contacted numerous individuals from Bidwell Consulting and institutional investor Edward Jones in writing and over

1  the phone accusing the McDonalds of embezzlement and seeking relief in the form of the return
2  of her money. Defendants thought it possible that Plaintiff had decided to drop these claims when
3  they didn't appear in her Complaint; however, Plaintiff's deposition confirmed that not only is
4  she bringing claims against the McDonalds "in this case" for misappropriation of her money in
5  NEWN's 401(k) plan, she is seeking restitutionary disgorgement of her funds and reimbursement
6  of tax penalties. Plaintiff's own moving papers acknowledge that her 401(k) fraud claims will be
7  presented to the state court if this case is remanded.

    Plaintiff should not be rewarded with attorneys fees for attempting to "hide the ball" by pleading around her federal claims in the guise of state court claims.

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion to Remand.

DATED: April 29, 2008                    GREENBERG TRAURIG, LLP

By: /s/ William J. Goines
    William J. Goines
    Cindy Hamilton

    Attorneys for Defendants and Cross-
    Complainants David D. McDonald, Donna K.
    McDonald, National Expert Witness Network
    and Technology CLE