1  WILLIAM J. GOINES (SBN 61290)
   KAREN ROSENTHAL (SBN 209419)
2  CINDY HAMILTON (SBN 217951
   GREENBERG TRAURIG, LLP
3  1900 University Avenue, Fifth Floor
   East Palo Alto, California  94303
4  Telephone: (650) 328-8500
   Facsimile: (650) 328-8508
5  Email:  goinesw@gtlaw.com
           hamiltonc@gtlaw.com
6

7  Attorneys for Defendants and Cross-Complainants
   David D. McDonald, Donna K. McDonald,
8  National Expert Witness Network and Technology
   CLE
9

10                   UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| JENNIFER OSBELT,<br><br>                    Plaintiff(s);<br><br>v.<br><br>DAVID D. McDONALD, DONNA K.<br>McDONALD, and DOES 1-10, inclusive,<br><br>                    Defendant(s). | Case No. CV 08-0534 PJH<br><br>**DECLARATION OF CINDY HAMILTON IN SUPPORT OF DEFENDANTS OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>Date:  May 21, 2008<br>Time:  9:00 a.m.<br>Dept:  Courtroom 3, 17th Fl. |
| AND RELATED CROSS-ACTION | |

        I, Cindy Hamilton, declare:

        1.      I am an attorney at law duly licensed to practice in the State of California and am an associate in the law firm of Greenberg Traurig, LLP, counsel of record for Defendants and Cross-Complainants Donna McDonald, David McDonald, National Expert Witness Network, and Technology CLE ("Defendants"). I am familiar with the facts and circumstances of the above-referenced action and the matters contained in this Declaration and would, if called upon as a witness, competently testify thereto.

1  2.  Attached hereto as <u>Exhibit A</u> are true and correct copies of the relevant portions of
2  the deposition testimony of Jennifer Osbelt of January 4, 2008, cited in Defendants' Opposition to
3  Motion Remand.
4  I declare under penalty of perjury under the laws of the state of California that the
5  foregoing is true and correct. Executed at East Palo Alto, California, this 29th day of April, 2008.
6
7                                         /s/ *Cindy Hamilton*
                                       Cindy Hamilton
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

JENNIFER OSBELT,

       Plaintiff,

vs.                              No. CIV 463528

DAVID MCDONALD, DONNA K. MCDONALD,

       Defendants.
_____/

AND RELATED CROSS-ACTION

**CERTIFIED COPY**

Deposition of

JENNIFER OSBELT

Friday, January 4, 2008

Volume 1

Pages 1 to 193

Reported by:
IRIS MEINKE-SMITH, RMR/CRR
CSR No. 3798
Job No. 1839JC



PHILLIPS LEGAL SERVICES
SAN FRANCISCO DEPOSITION REPORTERS
ONE SUTTER STREET, SUITE 700
SAN FRANCISCO, CA 94104
1-888-333-8270
WWW.PHILLIPSDEPO.COM

```
1              Do you see that?
2    A.        Yes, I do.
3    Q.        NEWN had two separate retirement vehicles in
4    place in 2006 and 2007, did they not?
5    A.        In 2007, I think, yes.
6    Q.        And can you tell me what you understood
7    those to be?
8    A.        I'm not totally familiar with the retirement
9    plans because the McDonalds had really set that up
10   with Bidwell Consulting. And they had asked me to
11   sign as a fiduciary and trustee because I was
12   25 percent owner of the company and they needed me
13   to. But I just signed to set up the 401(k) for the
14   employees.
15   Q.        Was one of the accounts that you had through
16   NEWN a 401(k)?
17   A.        I think it was.
18   Q.        And the other account was what, if you
19   understood it?
20   A.        I think it was a pension profit plan.
21   Q.        And you have accused the McDonalds of taking
22   your 401(k) and pension profit sharing plan in this
23   case; is that true?
24   A.        That's correct.
25   Q.        What bases do you have to say that?
```

165

1  A.      Well, I never agreed to fund it, number one.
2          Number two, for the 401(k) plan, I never
3  signed a salary reduction form. And the reason why I
4  know that is because I had a talk with Donna and Dave
5  McDonald and LeAnn in their house that I was not
6  going to fund it because I have a Prudential account
7  that I've already funded and I can't go over that
8  amount for the year. I have a maximum amount that I
9  can put in. And Prudential has been my IRA for years
10 and I will not fund my portion of the profits to the
11 plan. And it was well understood that I'm not going
12 to do that.
13 Q.      So they stole your money?
14 A.      I don't know if they stole it. They took my
15 money and put it in this plan without my salary
16 reduction form or a salary reduction form. So I'd
17 already funded my IRA, and then they went ahead and
18 put extra money into this plan without my permission
19 and it exceeded my maximum for the year. If they had
20 asked me, I would have told them that I had already
21 funded my maximum for the year.
22 Q.      Well, you got -- you would have had to have
23 been notified that there was a deduction made from
24 your distributions for a 401(k) contribution, would
25 you not?

166

```
 1   A.      Donna wrote me an e-mail and said, "I'm
 2   going to submit this amount for you."
 3           And so I said, "Okay. Well, let me take a
 4   look at it."
 5           And I contacted Steve Sutter and he said,
 6   "Yes, this has already been funded."
 7           And then I contacted Bidwell Consulting,
 8   Creasia Gale, and she stonewalled me. She said I had
 9   been removed as trustee and she can't talk to me.
10   Q.      Do you have any evidence that funds are not
11   sitting in a 401(k) account for you that were
12   distributed to a 401(k) account for the benefit of
13   Jennifer Osbelt from NEWN?
14   A.      I never approved them taking the money and
15   putting it in this account.
16   Q.      That's a different question. My question
17   is, do you have any evidence, any evidence that the
18   funds that were distributed to your 401(k) account
19   aren't sitting in a 401(k) account for the benefit of
20   Jennifer Osbelt?
21           MR. PONIST: Objection; mischaracterizes
22   testimony.
23           THE WITNESS: What evidence -- I have
24   evidence -- no, I don't have evidence of that. I
25   have evidence that they took my money without my
```

167

1  permission and funded this plan without a salary
2  reduction form and funded it without my permission,
3  not knowing that I'd already funded my IRA.
4  Q.    BY MR. GOINES: What would have been the
5  consequences of the funding of your 401(k) plan
6  through NEWN?
7  A.    Because I --
8      MR. PONIST: Objection; lack of foundation,
9  calls for expert opinion.
10      But you can answer.
11 Q.    BY MR. GOINES: Have you had to pay any
12 penalties, have you had to pay any taxes, have you
13 had to pay any interest as a result of that?
14 A.    Yes, I have to take my money out of my
15 Prudential account and pay an extra 10 percent
16 penalty.
17 Q.    Have you done that?
18 A.    No. Because I'm disputing them putting my
19 money inside this 401(k) plan without my permission.
20 Q.    So what you'd rather have is the money out
21 of your 401(k) so you can pay taxes on it?
22 A.    I would rather have the money out of my
23 401(k) and put it in my personal checking account
24 where it belonged.
25 Q.    And you can pay taxes on it, right?

168

```
 1   A.      I'm not supposed to fund that money. I'm
 2   over my maximum.
 3   Q.      Let me just ask you a question. Have you
 4   attempted to determine whether the amount of money
 5   that you contend that the McDonalds put in your
 6   401(k) plan without your permission still sits in a
 7   401(k) plan for the benefit of Jennifer Osbelt?
 8   A.      I believe it still sits somewhere, yes. I
 9   believe it sits at Edward Jones.
10   Q.      Do you know how much it was?
11   A.      I think it was around 40,000.
12   Q.      Are you talking about 401(k) or are you
13   talking about a pension plan?
14   A.      I think it was the combination of the two
15   plans.
16   Q.      I'm going to try and distinguish the two, if
17   I can.
18           Your understanding is that the funds,
19   whether 401(k) or the retirement plan, are sitting in
20   an account at Edward Jones. Is that consistent with
21   what you believe to be the facts?
22   A.      I think they're still sitting in an account.
23   Q.      And you think the total amount is about 40K,
24   plus or minus?
25   A.      I think so.
```

169

1  Q.    And was this just for '06 or was this for
2  prior years?
3  A.    This is just for '06.
4  Q.    To your knowledge, Jennifer, were any funds
5  distributed from NEWN to your benefit in a 401(k) or
6  retirement plan for any year prior to '06?
7  A.    From NEWN?
8  Q.    Yes, ma'am.
9  A.    No.
10 Q.    So what we're talking about here is the '06
11 distribution from NEWN that went into 401(k) and I'll
12 call it a pension plan.
13 A.    Uh-huh.
14 Q.    I'm not sure that's the right word. So it's
15 just '06?
16 A.    Yes.
17 Q.    And are you saying, Jennifer, that you
18 instructed the McDonalds to not make a contribution
19 to either the 401(k) or the pension plan for your
20 benefit?
21 A.    That's correct.
22 Q.    Do you have any understanding one way or
23 another whether you could do that?
24       And let me see if I can give you why I'm
25 asking that question.

170

```
 1            If a company adopts a certain type of
 2   pension plan, it has to do it for everybody as
 3   opposed to just select people.  Is that a concept
 4   that is okay with you?
 5   A.      Yes.
 6   Q.      Okay.  Do you have an understanding that
 7   NEWN adopted a plan that allowed it to distribute
 8   money for the retirement of its principals in 2006?
 9   A.      Yes.
10   Q.      And did you participate in the okay of that
11   plan?
12   A.      Yes, I was a trustee of that plan.
13   Q.      So let me see if I can ask you this
14   question.  I want to understand your -- the issue.
15           Your issue isn't that the money isn't
16   sitting in an account for the benefit of Jennifer
17   Osbelt.  Your contention is that they shouldn't have
18   put it there in the first place?
19   A.      That's correct.
20   Q.      So you're not saying that Dave and Donna
21   McDonald, as to this 401(k) retirement plan, took the
22   money and put it in their pockets.  You're saying I
23   didn't want them to put it away for me in this
24   account that is sitting at Edwards Jones.  Am I
25   syncing with you?
```

                                                              171

```
1    A.      That's correct.
2    Q.      Have you made efforts to withdraw any money
3    that was set aside from 2006 income from either Jones
4    or any other, I don't know, person who might be
5    holding those funds?
6    A.      Yes, I have.  They said that I cannot
7    withdraw for a year.
8    Q.      "They" is?
9    A.      Bidwell Consulting.
10   Q.      Person at Bidwell Consulting?
11   A.      Creasia Gale.  Creasia Gale.
12   Q.      We'll get you a spelling later.
13           C-r-e-c-i-a?
14   A.      C-r-e-a-s-i-a.
15   Q.      Thank you.  And did Creasia tell you that
16   the reason you couldn't make a withdrawal for a
17   period -- a year needed to expire was something that
18   Dave or Donna McDonald had done or that that was the
19   plan?
20   A.      They said that it was in the summary plan
21   description.
22   Q.      Did you ever get a summary plan description?
23   A.      Yes, I asked for the summary plan
24   description.
25   Q.      And provided to you by whom?
```

172

1  A.   I believe it was Dave Banathy.
2  Q.   At Bidwell?
3  A.   At Bidwell.
4  Q.   Am I understanding correctly that after a
5  year expires from mid '07, you will be able to make a
6  withdrawal?
7  A.   Well, I can withdraw it with a penalty. So
8  I'm losing that. And also, it's just sitting in a
9  money market, I believe. If I had it in my
10 Prudential account, I would be making a lot more
11 money with it. But I already overfunded -- I already
12 funded my Prudential account, so I wasn't supposed to
13 fund anything else ever anywhere this year.
14 Q.   Did you have an understanding as to whether
15 you could designate the destination of the proceeds
16 being deposited at the Edward Jones account?
17 A.   No, my understanding was that Dave and Donna
18 would pick where it's going. And they actually said,
19 "We're going pick where it's going."
20 Q.   So your understanding is you have no choice?
21 A.   That's correct.
22 Q.   Okay. Bullet point 5 says, "The buy-out
23 agreement will" -- in 51. Sorry.
24      "The buy-out agreement will also cover the
25 sale of Jennifer's 25 percent in TCLE, LLC. As

173

REPORTER'S CERTIFICATE

I certify that the foregoing proceedings in the within-entitled cause were reported at the time and place therein named; that said proceedings were reported by me, a duly Certified Shorthand Reporter of the State of California authorized to administer oaths and affirmations, and were thereafter transcribed into typewriting.

I further certify that I am not of counsel or attorney for either or any of the parties to said cause of action, nor in any way interested in the outcome of the cause named in said cause of action.

IN WITNESS WHEREOF, I have hereunto set my hand this 14th day of January, 2008.

_____

IRIS MEINKE-SMITH, CA CSR No. 3798
Registered Merit Reporter
Certified Realtime Reporter